# EXHIBIT 1

STATE OF ILLINOIS
ILLINOIS COMMERCE COMMISSION

| | |
|---|---|
| Illinois Commerce Commission<br>On Its Own Motion<br><br>-vs-<br><br>Liberty Power Holdings<br><br>Investigation into Sales, solicitation, and marketing practices, Policies and procedures, customer call center Operations and compliance with reporting Requirements | Docket No. 21-0362 |

**CHARGING DOCUMENT**

Staff of the Illinois Commerce Commission ("Staff"), by and through its undersigned counsel, and pursuant to the direction of the Administrative Law Judge, ("ALJ") respectfully files this verified Charging Document alleging Liberty Power Holdings, LLC ("LPH" or "Respondent") has committed the violations listed herein.

I. **BACKGROUND**

The Initiating Order in Docket No. 21-0362 directs this docket to proceed in two phases: first, an investigation phase, and second, if warranted by information adduced in the investigation phase, an enforcement phase. It is Staff's opinion that the documents and materials produced by LPH in discovery during the investigation phase provide a basis to conclude that LPH has committed violations meriting penalties authorized under Section 16-115B of the Act and warrant moving to the enforcement phase. This Charging Document commences the enforcement phase of this docket and outlines alleged violations that LPH has committed from January 1, 2019 through April 15, 2021.

1

The Commission's Rules of Practice, 83 Ill. Admin. Code 200, do not specifically address Charging Documents but review of other Illinois rules and statutes is informative as to the form and content of a Charging Document. Illinois Supreme Court Rule 572 presents a "Charging Document as something of a hybrid between the fact pleading required in Illinois civil courts (see 735 ILCS 5/2-603(b)) and a "notice to appear" as utilized in Illinois criminal courts (see 735 ILCS 5/107-12), as the intention of a Charging Document is both to require the respondent to appear and to provide notice of what offenses the respondent is alleged to have committed. The Illinois Administrative Procedures Act ("APA") is instructive in determining the form and substance of a Charging Document for an administrative agency like the Commission. Importantly, the APA does not mirror the fact pleading requirements of the Illinois Code of Civil Procedure, therefore "charges" before an administrative agency need not be drawn with the same precision as required in judicial actions. Instead, the APA requires only that the Charging Document contain "a short and plain statement of the matters asserted" (5 ILCS 100/10–25(4)), so that the Respondent is reasonably apprised of the allegations it is facing.[1] Staff endeavors to do just that in this Charging Document.

This Charging Document details LPH's violations as evidenced by the materials provided by Respondent through responses to Staff Data Requests, obtained from LPH's publicly accessible website, or available public filings published on LPH's entity profile page on the Commission's website.[2] LPH has filed for Chapter 11 Bankruptcy[3] and that

---

[1] It is the Commission, and not Staff, that will ultimately decide whether violations have occurred and, if so, what penalties should be imposed for those violations. Accordingly, this Charging Document represents only Staff's opinion as to violations that have occurred and recommendations for penalties for those violations, to which the Company will respond in an Answer, and nothing contained herein should be construed as a finding of violation.

[2] See https://www.icc.illinois.gov/emdb/ucdb/entity/U3063/filing-list?year=2021&ft=2

[3] See U.S. Bankruptcy Court, Southern District of Florida, Case No 21-13797-SMG, Docket No. 283.

proceeding appears to have impacted its ability to respond to Staff's data requests completely, so Staff relies only on what has been provided so far in this proceeding's discovery. Furthermore, in the interest of expediting this docket, Staff only alleges violations which are evidenced by factual information contained in discovery materials, rather than offering testimony. Staff expects LPH to file an Answer to this Charging Document admitting or denying each of Staff's allegations, pursuant to a procedural schedule to be established by the ALJ.

## II. ALLEGED VIOLATIONS

Staff alleges LPH's acts, practices, omissions, or inactions violated the following Commission Rules and sections of the Public Utilities Act governing the sales and marketing practices of an Alternative Retail Electric Supplier ("ARES") operating within the State of Illinois:

1. **83 Ill. Admin. Code 410.45(a) "Customer Call Centers"**: Part 410.45(a) states that the average answer time for ARES call centers "shall not exceed 60 seconds where a representative or automated system is ready to render assistance and/or accept information to process calls." 83 Ill. Admin. Code 410.45(a). LPH's call center Average Speed of Answer exceeded 60 seconds in 19 out of 28 months, as reported in LPH's response to Data Request ICC 1.05, attached to this Charging Document as Exhibit 1. The violations of 83 Ill. Code 410.45(a) that occurred in 2020 are further evidenced in LPH's 2020 call center report, also included in Exhibit 1.

2. **83 Ill. Admin. Code 410.45(c) "Customer Call Centers"**: By March 1st of each year, an ARES must file a report detailing the telephone answer time

performance and abandon call rate of its customer call center. LPH failed to file a Call Center Report for the year 2019. Screenshots of its compliance filings on its ICC entity profile page for the year 2020 are attached in Exhibit 2.[4]

3. **83 Ill. Admin. Code 412.115(a) "Uniform Disclosure Statement":** An ARES's Uniform Disclosure Statement ("UDS") must adhere to the form in Appendix A of 412.115. LPH failed to adhere to the Uniform Disclosure Statement ("UDS") Appendix A template in all five UDS templates provided in response to ICC 1.08, attached in Exhibit 3.

4. **83 Ill. Admin. Code 412.120(f) "In-person Solicitation":** When soliciting in-person, an ARES sales agent must leave a copy of a UDS "at the conclusion of the visit unless a customer refuses to accept a copy." 83 Ill. Admin. Code 412.120(f). As indicated in response to ICC 1.09, attached as Exhibit 4, LPH did not leave a copy of the UDS "with the customer at the conclusion of the visit unless a customer refuses to accept a copy." 83 Ill. Admin. Code 412.120(f). Further, in its answer LPH did not contend that a potential customer received a copy of the UDS at the conclusion of an in-person solicitation, but instead stated that their sales agents provide a UDS by follow-up email but only if an email was provided during the solicitation; sending the UDS via email after the sales call is not compliant with Part 412.120(f). LPH further states that its practice is to send a UDS by mail as a part of a "Welcome Kit" after a sales agent visit (*see* Exhibit 4). Not only is sending the UDS as a part of "Welcome Kit" not compliant with Part 412.120(f), the practice only results in consumers

---

[4] The entity profile page for 2020 is relevant because call center reports are due on or before March 1 of every year. 83 Ill. Admin. Code 410.45(c).

4

who actually enrolled with LPH receiving the UDS, rather than all consumers who were solicited, as intended by the Rule.

5. **83 Ill. Admin. Code 412.130(a) "Telemarketing"**: An ARES sales agent engaged in telemarketing must disclose their Agent ID number during solicitation calls. Staff identified three instances in which LPH's telemarketing sales agents did not disclose their Agent ID numbers on telemarketing solicitation calls in the recordings LPH provided in response to ICC 1.06(e). The recordings are attached as Exhibits 5.1 through 5.3.[5] Although Staff only alleges three violations, Staff believes this issue is more widespread than just the three instances provided by LPH because training material provided by LPH in its supplemental response to ICC 1.13 only instructs agents to give their first and last name without mention of the sales agents' Agent ID numbers. The supplemental response to ICC 1.13 is included in Exhibit 5.4.

6. **83 Ill. Admin. Code 412.130(e) "Telemarketing"**: Telemarketing rules require Third-Party Verifications include disclosures of sections 412.110(c) through 412.110(m). 83 Ill. Admin. Code 412.130(e). 83 Ill. Admin. Code 412.110(f) requires the agent to disclose "any applicable renewal clause". Staff's review of 13 Third-Party Verification ("TPV") recordings provided in response to ICC 1.06(e) and ICC 1.18 (attached as Attachments 6.1-6.13[6]) revealed there was no disclosure of "any applicable renewal clause" in any of the TPV recordings.

---

[5] Staff is filing the recordings in Exhibits 5.1 through 5.3 confidentially because the violation of 83 Ill. Admin. Code 412.130(a) occurs in the portion of the recording that contains customer information. Therefore, Staff cannot file a public redacted version of the recording that contains the violation.

[6] Staff is filing the recordings in Exhibits 6.1 through 6.13 confidentially because the calls contain confidential customer information. If Staff redacted all customer information in the recordings, the public version would be incomprehensible.

Furthermore, scripts provided by LPH in response to ICC 1.10 do not direct the TPV provider to disclose the "applicable renewal clause" as required in 83 Ill. Admin. Code 412.130. Scripts are attached in Exhibit 6.14.

7. **83 Ill. Admin. Code 412.170(c) "Conduct, Training and Compliance of RES Agents"**: An ARES sales agent shall not use marketing materials that include "false, misleading and materially inaccurate statements." 83 Ill. Admin. Code 412.170(c). Staff found multiple false, misleading, and materially inaccurate statements concerning LPH's renewable energy plans in the LPH's marketing materials and webpages. Staff will highlight three instances in this Charging Document.

First, LPH provided a Renewable Energy Credit ("REC") Purchase Certificate in response to ICC 1.11. This document claims the Renewable Energy product described by the certificate is "Regionally-Sourced/IL Wind." However, in the fine print describing its green products, LPH's webpage states that Green-e Energy is the certification entity for its RECs but that "*[i]n IL, the Wind REC is not certified by Green-e Energy. (Exhibit 7, Page 2). By LPH's own standards for certification, there is no independent verification that the wind RECs originate in Illinois. Moreover, in LPH's "Product Content Label" found on its website (Exhibit 7, page 3), the chart explicitly states that the RECs are 100% from Texas wind.

Second, the IL RES Green (Wind) Welcome Letter provided in response to ICC 1.11 (Exhibit 7, page 4) states that "renewable energy resources increase energy independence and boost economic development *in*

*your region* [emphasis added]." This statement suggests that the RECs purchased under the IL Wind program originate from or provide benefits to Illinois or its surrounding region but this claim is contradicted by the information available on its website showing the RECs purchased represent 100% wind energy from Texas.

Third, two sets of minimum terms and conditions LPH provided (out of a total of four), in response to ICC 1.12 claim "Liberty Power ensures that 100% of your electricity usage is offset by purchasing and retiring Voluntary Renewable Energy Certificates...representing the environmental attributes associated with the applicable amount of renewable energy generation from renewable generation facilities located in Illinois and adjacent states...[.]" (Exhibit 7, pages 5-10). This claim is contradicted by the information available on LPH's website showing 100% Texas Wind RECs.

8. **83 Ill. Admin. Code 412.190(b)(2) "Renewable Energy Product Descriptions"**: An ARES engaged in marketing "green" offers must disclose on its website the "percentage of electricity paired with renewable energy resources through RECs generated in the State of Illinois that will be used in supplying the electricity to customers pursuant to each offer." 83 Ill. Admin. Code 412.190(b)(2). LPH failed to disclose this information on its website.[7] There is no information regarding Illinois RECs on LPH's website in the link for "Illinois Residential Energy Plans" (Exhibit 8, page 1-3), and the link for "Liberty

---

[7] While this allegation is based on LPH's current website, Staff is of the opinion that this reliance is sound as LPH informed Staff, "with no material changes to the web pages above since April 15, 2021, the ICC may view the current site and it should be representative of what the web pages looked like on April 15, 2021." (LPH's Response to ICC 1.27, attached in Exhibit 8, page 6).

7

Green – 100% Illinois Wind" takes the site visitor to a general information page regarding Liberty's renewable products (Exhibit 8, page 4-6). On that general information page about Liberty's green plans, the only mention of Illinois RECs is an asterisk prefacing the statement, "*In IL, the Wind REC is not certified by Green-e Energy." (Exhibit 8, Page 5). There are two product labels[8] which currently appear on Liberty's website, the "Product Content Label" and "Historical Product Content Label," neither of these provide any information regarding Illinois RECs (Exhibit 8, Pages 7-8). The two product content labels are from 2018 and 2017 respectively, thus there is no current information regarding RECs available on LPH's website. In addition, the "Product Content Label" states that "[a]ctual figures may vary according to resource availability." (Exhibit 9, Page 4). Finally, the only Generation Location listed in each Product Content Label is Texas, where 100% of LPH's Wind RECs are generated.

9. **83 Ill. Admin. Code 412.190(b)(6) "Renewable Energy Product Descriptions"**: Upon request of Commission Staff, an ARES engaged in marketing "green" offers must provide Commission Staff verification that any RECs an ARES claimed to have retired have, in fact, been retired. 83 Ill. Admin. Code 412.190(b)(6). In ICC 1.37(e), Staff requested verification that the RECs LPH claimed to have retired but LPH did not provide any verification in response to ICC 1.37 (attached as Exhibit 9).

10. **83 Ill. Admin. Code 412.170(g) "Conduct, Training and Compliance of RES Agents"**: An ARES must "monitor marketing and sales activities" to ensure its

---

[8] Product content labels disclose the "quantity, types and geographic source of each [Renewable Energy] certificate." See https://www.green-e.org/long-rec-disclosure .

8

sales agents are providing accurate information and are in compliance with all laws and regulations. 83 Ill. Admin. Code 412.170(g). In response to ICC 1.23(g) (attached in Exhibit 10), LPH states that they do not review or monitor TPV Recordings.

## III. PENALTIES

Staff recommends the Commission revoke LPH's Certificate of Service Authority to operate as an ARES, pursuant to Section 16-115B of the Act. Furthermore, Staff recommends the Commission impose penalties totaling $614,688 for LPH's various violations. This total amount comprises penalties for the following violations:

1. 83 Ill. Admin. Code 410.45(a), $95,000;
2. 83 Ill. Admin. Code 410.45(c), $7,500;
3. 83 Ill. Admin. Code 412.115(a), $85,822;
4. 83 Ill. Admin. Code 412.120(f), $83,500;
5. 83 Ill. Admin. Code 412.130(a), $6,000;
6. 83 Ill. Admin. Code 412.130(e), $73,000;
7. 83 Ill. Admin. Code 412.170(c), $86,866.
8. 83 Ill. Admin. Code 412.190(b)(2), $83,500;
9. 83 Ill. Admin. Code 412.190(b)(6), $10,000;
10. 83 Ill. Admin. Code 412.170(g), $83,500

Attachment 11 to the Charging Document provides an explanation and calculation for each alleged violation.

January 18, 2022                                          Respectfully submitted,

/s/ _____

Marcy Sherrill
Alexander Bai
Office of General of Counsel
160 N. LaSalle C#800
Chicago, IL 60601
Marcy.sherrill@illinois.gov
Alexander.Bai@illinois.gov

Counsel for Staff of the Illinois Commerce Commission

## STATE OF ILLINOIS

## ILLINOIS COMMERCE COMMISSION

| | |
|---|---|
| Illinois Commerce Commission<br>On Its Own Motion<br>-vs-<br>Liberty Power Holdings<br><br>Investigation into sales, solicitation, and marketing practices, policies, and procedures, customer call center operations and compliance with reporting requirements. | 21-0362 |

## CERTIFICATION OF TRACY HOSE

State of Illinois        )
                         )
County of Cook           )

Tracy Hose, being first duly sworn on oath, deposes and states that she has personal knowledge of the information contained in this charging document, and the information in this charging document and exhibits attached therein are true, correct and complete to the best of her knowledge and belief.

*Tracy Hose*
Tracy Hose

11